48 F.3d 1232
 149 L.R.R.M. (BNA) 2256, 129 Lab.Cas. P 11,272
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 LA FAVORITA, INC., Petitioner,
v.
NATIONAL LABOR RELATIONS BOARD, Respondent.
 No. 94-9522.
 United States Court of Appeals, Tenth Circuit.
 Jan. 27, 1995.
 
 1
 Before KELLY and SETH, Circuit Judges, and KANE,** District Judge.
 
 ORDER AND JUDGMENT[1]
 KANE
 
 2
 After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. See Fed.R.App.P. 34(f) and 10th Cir. R. 34.1.9. The case is therefore ordered submitted without oral argument.
 
 
 3
 La Favorita, Inc., petitions, pursuant to 29 U.S.C. 160(f), to set aside or modify an order of the National Labor Relations Board (Board) awarding back pay in the amount of $7,476.00 to Valentin Garcia and $10,982.37 to Petronilo Garcia. The Board applies, pursuant to 29 U.S.C. 160(e), for enforcement of the order. We deny the petition and grant the Board's application for enforcement.
 
 
 4
 In earlier proceedings, the Board found that La Favorita violated the National Labor Relations Act (Act) by refusing to rehire Valentin Garcia because of his union activities, and by retaliating against Petronilo Garcia because he testified against La Favorita at a Board proceeding. It ordered La Favorita to reinstate both individuals and make them whole for loss of earnings, with back pay to be calculated pursuant to F.W. Woolworth, 90 NLRB 289 (1950). We enforced both orders. NLRB v. La Favorita, Inc., 963 F.2d 382 (Table), No. 91-9543 (10th Cir. May 26, 1992); La Favorita, Inc. v. NLRB, 977 F.2d 595 (Table), No. 92-9509 (10th Cir. Sept. 30, 1992).
 
 
 5
 La Favorita offered to reinstate both Garcias, and both offers were refused. In a supplemental decision, the Board determined the Garcias' back pay under the formula set forth in F.W. Woolworth. This formula provides that an employee's net earnings, if any, are deducted from what the employee would have earned for such quarter if he had not been discharged. F.W. Woolworth, 90 NLRB at 293. Earnings in one quarter have no effect on back pay liability for any other quarter. Id.
 
 
 6
 La Favorita challenges the Board's application of the F.W. Woolworth formula. The applicability of the F.W. Woolworth formula was not raised in the earlier enforcement proceedings before this court, and we did not address it. However, no authority has been cited that would foreclose La Favorita from challenging use of the formula in this proceeding because it failed to raise it in the previous enforcement proceedings. La Favorita contends that application of the F.W. Woolworth formula is inequitable because it more than makes the Garcias whole for income lost due to La Favorita's violation of the Act. It urges use of a formula whereby total actual earnings are subtracted from the total pay the Garcias would have earned had they continued to work for La Favorita.[2]
 
 
 7
 The Board has broad discretion to order a remedy for a violation of the Act, subject to limited judicial review. Monfort, Inc. v. NLRB, 965 F.2d 1538, 1546 (10th Cir.1992). "[W]e must give 'special respect' to the Board's choice" of a remedy for a violation of the Act. Id. (quoting NLRB v. Gissel Packing Co., 395 U.S. 575, 612 n. 32 (1969)). However, our deference ends where the Board attempts " 'to achieve ends other than those which can fairly be said to effectuate the policies of the Act.' " Id. (quoting Virginia Elec. & Power Co. v. NLRB, 319 U.S. 533, 540 (1943)).
 
 
 8
 The Board's use of the F.W. Woolworth formula was approved by the Court in NLRB v. Seven-Up Bottling Co., 344 U.S. 344 (1953). The Court observed that before adopting the F.W. Woolworth formula the Board had computed back pay in the manner advocated by La Favorita. The Board concluded, however, that that remedy failed to effectuate the purposes and policies of the Act. Seven-Up Bottling Co., 344 U.S. at 347. The problem was that if an employee obtained a better paying job sometime after discharge, it became profitable for the employer to delay an offer of reinstatement as long as possible, because the employee's interim earnings from the new, higher-paying job would reduce the employer's back pay liability. Id. Additionally, under the old formula the employee would be pressured to waive the right to reinstatement so as to prevent the continuing reduction of back pay. Id. The Court concluded that the Board had authority to fashion the remedies of back pay and reinstatement so as to complement rather than conflict with one another. Id. at 348.
 
 
 9
 La Favorita, however, relies on the dissent in that case which opined that the formula should not be used where an employer's business fluctuates such that an employee would have high income in one quarter and low income in the next. Id. at 352. La Favorita contends this case presents such a situation, noting that Valentin Garcia would have earned $5,606 at LaFavorita in the third quarter of 1991, but only $3,576 in the second quarter of 1992.[3]
 
 
 10
 Although the dissent is not binding, the majority in Seven-Up Bottling did indicate that the Board should not apply F.W. Woolworth "without regard to circumstances which may make its application to a particular situation oppressive and therefore not calculated to effectuate a policy of the Act." Seven-Up Bottling, 344 U.S. at 349. Here, the bulk of the back pay awarded Valentin Garcia accumulated between the fourth quarter of 1989 and the first quarter of 1991. Considering all the full quarters that back pay accumulated, with one exception,[4] the highest total gross back pay was $4,894 in the third quarter of 1990, and the lowest was $4,301 in the second quarter of 1990, a difference of less than $600. The Second Circuit concluded that a variation in quarterly earnings that was higher than this, and that constituted a much larger proportion of the quarterly earnings, was not of a sufficient magnitude to compel the Board to depart from the F.W. Woolworth formula. NLRB v. Local 138, Int'l Union of Operating Eng'rs, 380 F.2d 244, 251-52 (2d Cir.1967).[5] We reach the same conclusion here and hold the Board acted within its broad remedial power in computing back pay under the F.W. Woolworth formula.
 
 
 11
 La Favorita next argues that Petronilo Garcia's back pay should have terminated in November 1991 when he voluntarily quit his job with Eaton Metal Products. While La Favorita did not raise this precise argument before the Board, it did contend that back pay for Petronilo Garcia should have terminated permanently when he left an earlier job. Because the legal principle is the same, we address the contention.
 
 
 12
 The Board excluded from the back pay computation the period of time from November 5 to December 31, 1991, when Petronilo Garcia removed himself from the labor market, but included the period after he returned to work on January 3, 1992. We see no error. A voluntary quitting of interim employment does not bar an employee from recovery of any back pay for the whole period of discrimination; rather, it merely bars recovery for the period when the employee was voluntarily out of the labor market. East Texas Steel Castings Co., 116 NLRB 1336, 1347-48 (1956), enforced, 255 F.2d 284 (5th Cir.1958), clarified, 281 F.2d 686 (5th. Cir.1960).
 
 
 13
 The petition for review is DENIED. The National Labor Relations Board's request for enforcement is GRANTED.
 
 
 
 **
 Honorable John L. Kane, Jr., Senior District Judge, United States District Court for the District of Colorado, sitting by designation
 
 
 [1]
 This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of the court's General Order filed November 29, 1993. 151 F.R.D. 470
 
 
 [2]
 For example, Valentin Garcia would be entitled to $2,701.62, rather than $7,476, if back pay were computed under La Favorita's formula
 
 
 [3]
 The difference is attributable to a difference in overtime he would have worked
 
 
 [4]
 The third quarter of 1991 was an anomaly with a total gross back pay of $5,606. However, Valentin Garcia's net back pay from that quarter was only $368
 
 
 [5]
 In Local 138, the greatest variation was between earnings of $1,193 and $1,967, a difference of $774. 380 F.2d at 252